The Chancellor.
This case, upon the testimony, is clearly with the defendants. The amount bid, taken in connexion with the fact that the property was first set up subject to the mortgages and no bid could be obtained, shows that the sale-made was not a sale subject to the incumbrances. The amount bid, and at which the property was struck off, was the sum which the purchaser agreed to pay for the whole property. There is nothing in the conditions of sale opposed to this.These conditions, as well as the order for the sale, are silent as to whether the property was to be sold subject to or free from incumbrance. It was said the commissioners could not sell-free of incumbrance. The mortgagee could agree that the sale should be so made, and that he would give up the mortgage on receiving the purchase money. It was objected, that the conditions of sale were written, and that parol evidence to show that the sale was made clear of incumbrances was inadmissible. The conditions were silent as to how the property was to be sold, in this respect. The parol evidence, therefore, does not contradict the written conditions; and it may he said, further, that it does not add to the conditions. They provide generally for the sale of the property; and the pre *40 sumption arising from the conditions would be, that the property, and not merely an equity of redemption, was to be sold.
It was said that Elton Rogers, being only one of two co-executors and trustees, could not make a valid agreement that the property should be sold clear of the first mortgage, that being given to both executors and trustees. He could agree for himself, and in reference to his own mortgage, which was the junior mortgage; and the property brought, and it was well understood at' and before the sale that it would bring, more than enough to satisfy the first mortgage. It was; in substance and effect, an agreement by him, that if the proceeds of the sale fell short of paying his mortgage after satisfying the prior one, he would immediately give up his mortgage on receiving the residue after satisfying the prior mortgage.
It was said, that the commissioners’ deed only conveyed the right and interest of the mortgagor. This, I apprehend, is a mistake. The deed is in the usual form. It conveys the property, describing it, together with all, &c., and all' the right, title and interest, &c. The whole property, both halves, one half not being at all incumbered, was conveyed by the same deed, and by the same language. No distinction or difference of language was used in respect to the different halves.
The casé is, the same as if the whole property was subject to one mortgage only, and on a proposed sale of the property at auction, it .was found that no one was willing to bid the amount of the mortgage. It is clear that the mortgagor could not sell without the mortgagee’s consent; but the mortgagee may consent that it be sold for what it will bring, and that if it sell for less than the amount due on the mortgage, he will nevertheless receive the amount bid and cancel the mortgage.
But'it is asked, can this be done without writing ? If the sale is actually made on such an agreement without writing, and the sum bid is bid on these terms ; though it may be that the mortgagee might refuse to receive the money and give up his mortgage; yet, if he receives the purchase money, knowing that the purchaser pays it as for a clear title, he cannot be permitted afterwards to set up his mortgage as a lien. The statute of frauds will not protect him in such a transaction.
*41 There is nothing in the terms of the written receipt he gave, that helps him. On the contrary, its operation is against him. It says, “ Received from the commissioners appointed to make sale of certain real estate held by William Rogers and John Warrington, as tenants in common, 963 dollars and 66 cents, being the equal half of the sales of said real estate, after deducting thereout the taxed bill of costs ; which said sum was by said court directed to be paid to William Rogers, to defray certain mortgages on the premises : and he signs it as the agent of William Rogers.”
Now if the property was sold subject to the incumbrances, the proceeds of the sale would not go to defray the mortgages. If that had been the case, the property in the hands of the purchaser would have remained liable for the amount of all the mortgages, and the proceeds of the sale would have been payable, without any condition or qualification, to the owner of the property.
The counsel for the complainants would have us understand or infer from the case as presented by the proofs, that the sale must have been made in this wise: the property to be sold to the highest bidder ; the amount bid to he applied towards paying the mortgages ; and if it be not sufficient, then the property in the hands of the purchaser to be liable for the balance.
This would be saying to the bidders, the property will be sold to the highest bidder, but it cannot be sold unless the bid is equal to the amount of the mortgages. If that had been the understanding, the first thing to have been done would have been, to ascertain the precise amount due on the mortgages; and after this was done, the first bid (if any one was willing to make it) would have been the amount of the nortgages; for what propriety would there have been in beginning at a lower bid. But it is proved by every one of the witnesses present, that an effort was made to sell subject to the mortgages, and not a bid could be had.
Again, as to the idea that his agreement was not binding on his co-trustee. I have said before, that the mortgage held by the trustees was the first mortgage, and there was enough to pay it. There is something extraordinary in fc 1 torts application of the money. Why did he not apply the proceeds first to the *42 payment of the first mortgage ? He was the active trustee, and held both the mortgages. The question must be considered' here, as if the first mortgage had been wholly paid off, and the1 deficit was claimed on his .own mortgage,- against and in opposition to his own agreement at the sale.' Fairness and ingenuousness required him to pay the first mortgage, and to meet-the question on his own mortgage. It is the same case as if he was the only mortgagee. And in this view, the fact that he bid himself atthe sale, is strong, perhaps conclusive.- He bid 2050 dollars. Did he mean to pay that sum to the mortgagor t Did he bid that sum over and above the mortgage I
It was objected, that there was a fraud practised on Elton-at' the sale; that there was an arrangement-between-Haines, the purchaser at the sale, and the owner of the other half, that Haines was to make up to-him 1200 dollars for his half, let the property bring what it might at the sale. More than one answer may be given to this. Elton knew of that arrangement at the sale, and before the property was sold. This is distinctly proved by Nathan Warrington ; who swears he told Elton of this arrangement, that he might have a chance to take care of himself. And yet he-suffers the sale to proceed free of incumbrance, and receives of the proceeds of the sale the half belonging to the mortgagor, for whom he was acting as agent.
It is evident he understood that the money paid, was paid as in full for the property free from incumbrance! It was so paid. This is distinctly proved. If he received it knowing the purchaser paid it in that way, this court cannot give effect to any mental reservation- of his at the time, that after getting the money he would so arrange it as to throw the deficit on the first mortgage and collect it on that. If he should think himself justified in so doing, under an idea that a fraudulent arrangement had been made between Warrington and Haines as to the other half, the court differs. This idea of counter-cheating cannot be entertained here.
It was said, that the property should be sold again, under a decree of this court; and if it brings more than it did before, the surplus should be applied to the complainants’ mortgage. This would not relieve us from the difficulty. A new mortgage has been given by the. grantee of the, purchaser at the. commission *43 ers’ sale, for 1500 dollars; and there is no probability that the property would bring enough to satisfy that, after paying the two mortgages in full. It is better to meet the question here.
The fact that eight years have been permitted by the complainants to elapse, and that in the mean time a mortgage has been given by the grantee of the purchaser at the commissioners’ sale, is entitled to no small influence in the case, if it was doubtful without it.
The complainants’ bill will be ordered to be dismissed.
Order accordingly.